**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:18-CR-137 |
| | ) | |
| DENNIS A. JONES, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>OPINION AND ORDER</u>**

This matter is before me on Dennis Jones' motion for compassionate release

pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to the COVID-19 pandemic. [DE 31.] Jones

is a 49 year old male currently incarcerated at FCI Elkton in Lisbon, Ohio, which as I've

noted before, is an institution that has been particularly hard hit with the current

epidemic. Jones has several underlying health issues, including Type 2 Diabetes,

hypertension, and obesity. In accordance with my order dated April 30, 2020, Federal

Defender Peter Boyles filed an appearance on April 30, 2020, and requested an

extension of time to file a supplemental brief in support of Jones' motion for

compassionate release. [DE 32, 34.] I granted the extension, and attorney Boyles filed a

memorandum on June 15, 2020, as well as medical records. [DE 37, 39.] The

government filed a response in opposition to the motion on June 29, 2020. [DE 41]. I

held a telephonic hearing in this matter on July 10, 2020.

Let's start with the procedural background of the case. On December 18, 2018,

Jones was charged in an information with one count of possession of child pornography

in violation of 18 U.S.C. § 2252(a)(4)(B).  [DE 1.]  He pleaded guilty on January 3, 2019.

The Presentence Report indicates that Jones was a registered user of "Playpen," which

was an online child pornography exchange located on the dark web. [PSR, DE 16, ¶¶

16-17.] Playpen was an online bulletin board and website dedicated to the

advertisement and distribution of child pornography and the discussion of matters

related to the sexual abuse of children. [PSR ¶ 16.] Jones possessed an extensive and

disturbing collection of pornography.  A hard-drive recovered from Jones' possession

revealed over 177,000 images, the vast majority which contained adult and child

pornography. [*Id.* ¶ 19.] Additionally, a Micro-SD card contained approximately 30

child pornography videos including depictions of sadistic and masochistic conduct. [*Id.*

¶ 20.] A Samsung tablet model was also recovered from Jones, and that contained over

150 child pornography images depicting prepubescent minors and early teen females.

[*Id.* ¶ 21.]  A recovered Cyber Power computer tower contained approximately 1,000

child pornography images and 15 child pornography videos.  [*Id.* ¶ 22.]  Due to the

volume of child pornography found on Jones' devices, certain images were sent to the

National Center for Missing and Exploited Children (NCMEC), which identified over

2,000 images depicting victims that are known to law enforcement through prosecution

of child abuse cases nationwide.  [*Id.* ¶ 23.]

Jones' total offense level was a 28.  For his criminal history, Jones had an arrest

for conversion in 1991 and had a criminal history category of I.  [PSR ¶¶ 55-56.] Jones'

guideline range was 78-97 months imprisonment.  [*Id.* ¶ 101.]  On April 5, 2010, I

sentenced Jones to 70 months imprisonment followed by 5 years of supervised release. [DE 23.]

In support of his motion, Jones cites to his Type 2 Diabetes, hypertension, high cholesterol, obesity (he has a BMI of 38), and the high rate of infection at FCI Elkton. Jones' cellmate was the fourth inmate at FCI Elkton to die from COVID-19. [DE 37 at 6.] Additionally, Jones' adult son, Jacob, suffered a traumatic brain injury in an automobile collision in 2010 and he is wheelchair bound and requires 24-hour care and assistance. [*Id.* at 8.] While Jacob is currently being cared for by Mr. Jones' wife, she has recently filed to dissolve the marriage and indicated without Jones' ability to deal with Jacob's biological mother, it has become increasingly difficult to continue to serve as Jacob's guardian. *Id.* Mr. Jones claimed in his supplemental memorandum that Mrs. Jones is exploring the possibility of being removed as Jacob's co-guardian, and his release would allow him to resume the role of being Jacob's primary caregiver and providing continuity of care for Jacob. *Id.*

The instant request is for compassionate release under the First Step Act. Jones bears the burden of showing he is entitled to compassionate release. *See United States v. Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31. 2020). Compassionate release is "an extraordinary and rare event." *United States v. Mangarella*, 3:06-cr-151-FDW-DCK-3, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).

Before I get into the merits of Jones' claim, I need to first look into the exhaustion requirement. The First Step Act provides that I can consider a motion directly from the

defendant after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Jones has requested compassionate release twice since his sentencing. First, on April 17, 2020, he submitted a request for compassionate release to the Warden of FCI Elkton on the grounds that he and his wife are divorcing, and explaining that he needs to be released to care for his disabled adult son. [DE 41-1.] On April 22, 2020, Jones submitted a letter to me seeking compassionate release on the same grounds. [DE 29.] On April 23, 2020, I denied his request for failure to exhaust his administrative remedies. [DE 30.] Seven days later, on April 29, 2020, Jones, pro se, submitted a second letter to me seeking compassionate release, this time based on his health concerns regarding the COVID-19 pandemic. [DE 31.] It seems that this request was never submitted to the warden. Indeed, Jones concedes and "acknowledges he has not exhausted his administrative remedies." [DE 31 at 2-3.] Yet, Jones' attorney in the supplemental brief states that:

> Mr. Jones submitted a request for a reduced sentence and compassionate release to the Warden at FCI Elkton. Mr. Jones was advised that the Warden denied Mr. Jones' request and notified him that he should speak with his case manager. His case manager advised Mr. Jones that he should go straight to the Court.

[DE 37 at 4.] Additionally, his attorney stated in the telephonic hearing that he believed the second request (based on COVID-19) was denied by the warden. However, Jones

has not provided any proof that he submitted this present claim for compassionate release due to the COVID-19 epidemic to the BOP first, as required by the statute.  As the government pointed out, there is nothing in his records showing Jones made this request and Jones admits in his handwritten motion to me that he did not administratively exhaust his remedies with regard to this claim.  Jones' attorney has done nothing to disprove Jones' admission.  As such, Jones has not satisfied the administrative exhaustion requirement.  But even if he had, I would still deny Jones' request on the merits, as explained below.

The First Step Act provides that the Court may reduce the term of imprisonment after considering the factors set forth in section 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction" and that such a reduction "is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  In other words, the compassionate release statute directs me to make three considerations: (1) whether a reduction is consistent with the factors listed in section 3553(a); (2) whether extraordinary and compelling reasons warrant a sentence reduction; and (3) whether a reduction would be consistent with the Sentencing Commission's policy statements.  All three considerations weigh against release in this case.

The section 3553(a) factors, which are well-known by this point, include the nature and circumstances of the offense and history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, afford

adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the kinds of sentences and sentencing range for the applicable category of offense committed. 18 U.S.C. § 3553(a). Before I address whether "extraordinary and compelling reasons" warrant a reduction in Jones' sentence, I will look to the factors set forth in section 3553(a). I remember this sentencing, and I recall the extremely serious nature of Jones' offense. Jones joined a secret online community, Playpen, which engaged in child exploitation and supposedly hid its users from law enforcement. The thousands of images found in Jones' possession were not only staggering in number, but also extremely disturbing.

Jones' current release date is May 20, 2024. One of the factors that weighs the most strongly against release is the fact that Jones has only served 13 months of his 70 months sentence. I don't think it would be fair to the multiple victims, including many children, and the victims already identified by NCMEC, to allow Jones to leave prison and serve home confinement. In sum, the Section 3553(a) factors of punishment, deterrence, and promotion or respect for the law do not warrant release in this case. *See, e.g., United States v. Miezin,* No. 1:13 CR 15, 2020 WL 1985042, at *5 (N.D. Ohio Apr. 27, 2020) (denying motion for compassionate release made by a defendant who had distributed child pornography on an online portal, noting that home confinement "would only serve to enhance his danger" because it would be difficult to monitor his behavior and he "could engage in his prior criminal conduct at any time from his place of home confinement."); *United States v. Pena*, No. 2:15-CR-72-PPS, 2020 WL 3264113, at

6

*3 (N.D. Ind. June 17, 2020) (denying request for compassionate release based in part on the severity of the offense); *United States v. Cochran*, No. 2:06 CR 114, 2020 WL 2092836, at *5 (N.D. Ind. May 1, 2020) (denying motion for compassionate release where prisoner is housed at FCI Elkton and "[r]equiring defendant to serve the remainder of his sentence would promote respect for the law and provide just punishment for defendant's offense.").

In turning to whether there are "extraordinary and compelling reasons [that] warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" 18 U.S.C. § 3582(c)(1)(A), I note that the pertinent policy statement is set forth in the United States Sentencing Guidelines (USSG) § 1B1.13.  This would allow me to reduce Jones' sentence if I determined extraordinary and compelling reasons warrant the reduction, Jones is not a danger to the safety of any person or the community, and the reduction is consistent with the policy statement.  USSG § 1B1.13.  The Sentencing Commission also provided specific examples of what constitutes an extraordinary and compelling circumstance, which include, *inter alia*: the defendant is suffering from a terminal illness; the defendant is suffering from a serious physical or medical condition; the death or incapacitation of the caregiver of the defendant's minor child or minor children or upon the incapacitation of the defendant's spouse/registered partner when the defendant would be the only caregiver for that spouse/registered partner; or other reasons as determined by the Director of the BOP.  USSG § 1B1.13 cmt. n. 1.

Here, while the care of Jones' adult disabled son is certainly a concern, Jones' attorney indicated during the hearing that Mrs. Jones is continuing to take care of Jacob even though the biological mother has been creating some issues. Therefore, it seems that situation is relatively stable, at least for now, and Jones' motion is really based upon his desire to get out of prison due to COVID-19.

Jones' health conditions do not qualify as extraordinary or compelling reasons to reduce his sentence or place him on home confinement. Jones has Type 2 Diabetes, hypertension, high cholesterol, and obesity (38 BMI). There is nothing about Jones' conditions in general which would constitute an extraordinary or compelling reason to reduce Jones' sentence. *See, e.g., United States v. Carpenter*, No. 2:14-cr-309-GEB, 2019 WL 7631396, at *2 (E.D. Cal. Dec. 23, 2019) (denying compassionate release where the records "evince that [the prisoner's] medical conditions are not life-threatening and should not limit her self-care ability."); *United States v. Ayon-Nunez,* No. 1:16-CR-130-DAD, 2020 WL 704785, at *2-3 (*E.D. Cal. Feb. 12, 2020) (quotation omitted) (rejecting compassionate release reasoning "[t]o be faithful to the statutory language requiring extraordinary and compelling reasons, it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release."); *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D. N.M. 2019) (quotation omitted) ("In exercising discretion under § 3553(a) and the First Step Act, most courts treat compassionate release due to medical conditions as . . . a rare event.").

8

The real question is whether Jones' health conditions in addition to COVID-19 justify compassionate release.  Even considering Jones' Type 2 Diabetes, obesity, high cholesterol, and hypertension in the midst of the COVID-19 pandemic, he still does not meet the extraordinary and compelling standard in this case.  The CDC has indicated that people of any age with Type 2 Diabetes mellitis "are at increased risk of severe illness from COVID-19" and recommends that people with diabetes take actions including "continue taking [] diabetes pills and insulin as usual."

Https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last viewed July 13, 2020).   Hypertension might also be a risk, and people with obesity (a BMI of 30 or higher) are also at an increased risk for severe illness as a result of COVID-19.  *Id.*  But Jones' medical records show his conditions are being monitored and treated with prescription drugs, under the supervision of health care professionals at the BOP.  [DE 39.]

I am well aware of the high rate of infection of COVID-19 at FCI Elkton, as a number of inmates have petitioned me and other courts for release from this particular institution.  *See, e.g., United States v. Tranter*, 1:17-CR-22-HAB, 2020 WL 3841268, at *1 (N.D. Ind. July 8, 2020) (recognizing that "FCI Elkton is, by all accounts, a model for how not to run a prison during a pandemic," but nevertheless denying obese petitioner's motion for compassionate release due, in part, to the severe nature of his possession of child pornography and the fact he had only served less than one fifth of his sentence).  While the numbers are constantly changing, the government has

submitted that as of June 24, 2020, there were 236 positive inmates and 7 positive staff at FCI Elkton. [DE 41 at 10.]

FCI Elkton attracted national attention during the pandemic when certain inmates filed an emergency habeas action seeking release due to the spread of COVID-19. During that litigation, Jones was identified on a list of vulnerable inmates. *Wilson v. Williams*, No. 4:20-CV-794, DE 35-1 at 5 (N.D. Ohio Apr. 30, 2020). Jones' attorney represented during the telephonic hearing that Jones is categorically not eligible for release due to the crime he committed. While I won't comment on what I think of the propriety of categorically denying release to certain prisoners, this position is telling as to how severe the system considers Jones' actions. As noted in the government's response, and by other courts, FCI Elkton is now taking extreme measures to ensure the safety of the prisoners, including issuing face masks, facilitating social distancing, screening new inmates, isolating symptomatic inmates, and prohibiting visitors. *See Wilson v. Williams*, No. 20-3447, 2020 WL 3056217, at *1-2, 7-8, 11 (6th Cir. June 9, 2020 (describing FCI Elkton's pandemic-response measures and vacating the district court's preliminary injunction).

I do not think Jones' concern about getting COVID-19 in prison justifies compassionate release in this case. Indeed, "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13." *United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *see also United States v. Collins*,

No. 14-cr-30038, 2020 WL 2301217, at *2 (C.D. Ill. May 8, 2020) (denying motion for compassionate release, recognizing "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that makes him more susceptible to the disease.").

While I am certainly sympathetic towards Jones' family situation and his concern about potentially becoming infected with COVID-19 from someone else at the facility, Jones has not demonstrated that the facility is unequipped to provide appropriate medical treatment if he were to become sick.  He has therefore not shown that release is necessary for the compelling reason of protecting his life.  Moreover, because he has so much length on his sentence left, and because of the disturbing and graphic nature of he child pornography possessed by Jones, I do not think home confinement is deserved.

Issues surrounding the COVID-19 pandemic are changing rapidly and new developments are occurring almost every day.  At this point, based upon all the facts before me, I do not think that Jones' sentence should be reduced and he should be released for home confinement.  If factual developments warrant a reconsideration, Jones is free to exhaust his administrative remedies again, and file a new motion under § 3582(c)(1)(A).

### Conclusion

Despite the severity of the COVID-19 pandemic, Dennis Jones' motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to the COVID-19 pandemic [DE 31] is DENIED.  Jones has not shown the factors under section 3553(a) warrant release or that extraordinary and compelling reasons warrant such a reduction

under § 3582(c)(1)(A).

SO ORDERED.

ENTERED: July 14, 2020.

     /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT